# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

CASE NO.:

**KATARZYNA JARRETT,**

    *Plaintiff,*

**v.**

**FAIR COLLECTIONS &
OUTSOURCING, INC., TRANS
UNION, LLC, EXPERIAN
INFORMATION SOLUTIONS,
INC. and EQUIFAX
INFORMATION SERVICES LLC,**

    *Defendants,*

_____/

## <u>PLAINTIFF'S COMPLAINT</u>
## JURY DEMAND

1.    Plaintiff, Katarzyna Jarrett (hereinafter "Plaintiff" or "Ms. Jarrett") brings this action against Defendants Fair Collections & Outsourcing, Inc. (hereinafter "FCO"), Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian") and Equifax Information Services LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

2.    Plaintiff further alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA") and the Florida Consumer Collection Practices act, Florida Statute §559.72 *et. seq.* (hereinafter "FCCPA") against FCO and states the following in support:

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.      Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

5.      Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

6.      Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Brevard County, Florida.

## PARTIES

7.      Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Brevard County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c), 15 U.S.C. §1692a(3) and Florida Statute §559.55(8).

8.      Defendant FCO is a Maryland corporation registered to conduct business in the State of Florida with a principal place of business at 14400 Sweitzer Lane, Suite 235, Laurel, MD 20707.

9.      FCO is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and Florida Statute §559.55(7).

10.     At all times material hereto, FCO regularly collects or attempts to collect debts for other parties.

11.    FCO uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the three national consumer reporting agencies, Trans Union, Equifax, and Experian (collectively "credit reporting agencies").

12.    These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

13.    Defendant Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

14.    Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

15.    Defendant, Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling,

3

evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

## STATUTORY FRAMEWORK

### The FCRA

16.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq*., was enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

17.     Congress found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3),(4).

18.     The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

19.     Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

20.    The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required CRAs to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

21.    A CRA may decline to "block" information only if the CRA reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. *See* 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined the CRA must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B). See 15 U.S.C. §§ 1681c-2(c)(2).

22.    In the absence of such a determination of material misrepresentation or error, a CRA cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

23.    "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional

information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Experian Info. Solutions, Inc.,* No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

24.    The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

25.    The FCRA requires that if a consumer disputes any item of information contained in their credit file, the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

26.    In performing the reinvestigation, the FCRA requires the CRA to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

27.    The FCRA also requires the CRA to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

28.     The FCRA provides that if the disputed information is inaccurate or incomplete or cannot be verified, the CRA "shall...(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

29.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

30.     "Furnishers of information," pursuant to 15 U.S.C. §1681s-2(b), are required to conduct a reasonable investigation into each of the written disputes that they receive from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).

31.     The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

32.     The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

33.     The FCRA requirements are important, because they help CRAs ensure that the information in their consumer reports is accurate, they assure that

consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

34.    The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1681n.

35.    If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

36.    If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

37.    A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

**The FDCPA**

38.    The FDCPA provides, in relevant part: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: (2) The false representation of -- (A) the character, amount, or legal status of any debt ..." *See* 15 U.S.C. § 1692e.

39.    A consumer has a right under the FDCPA to receive information from a debt collector that is not "false, deceptive, or misleading." *See Pralle v. Cooling & Winter, LLC*, No. 2: 16-cv-865-FtM-99CM (M.D. Fla. May 2, 2017).

40.    The FDCPA defines the term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *See* 15 U.S.C. § 1692a(3).

8

41.     The FDCPA defines the term "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *See* 15 U.S.C. § 1692a(5).

42.     The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *See* 15 U.S.C. § 1692a(6).

43.     "The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (citing 15 U.S.C. § 1692k).

44.     For the purposes of the claims brought in this action, the applicable standard under the FDCPA in the Eleventh Circuit is "the least sophisticated" consumer test. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the test enunciated in Exposition Press Inc. v. FTC, 295 F.2d 869 (2d Cir. 1961)).

45.     The principles underlying the FDCPA must be implemented for "the public— that vast multitude which includes the ignorant, the unthinking and the credulous." *See Jeter*, 760 F.2d at 1172-73 (internal citations omitted).  The "fact

that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Id.* at 1173 (internal citations omitted).

46.    There is only one affirmative defense to liability for a violation of the FDCPA, the "bona fide error" defense. *See* 15 U.S.C. §1692k(c).

47.    To take advantage of this defense, the defendant must show by the preponderance of the evidence that its violation of the Act was not intentional, was a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error. *See Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352-53 (11th Cir. 2009).

**The FCCPA**

48.    The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

49.    The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist." *See* Fla. Stat. § 559.72(9).

50.    "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." *See* Fla. Stat. §559.77(2).

51.     As a consumer, Ms. Jarrett has a private right of action against FCO pursuant to Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." (omissions added).

## FACTUAL ALLEGATIONS

52.     Ms. Jarrett is a victim of identity theft.

53.     In or around 2022 and 2023, an unknown individual obtained access to Ms. Jarrett's personal identify information, obtained fraudulent government identification cards using her information and began submitting apartment rental applications in her name.

54.     Ms. Jarrett has been a homeowner since January 2021 and did not have a need to rent apartments in 2022 or 2023.

55.     In or around July 2023, Ms. Jarrett discovered that she was a victim of identity theft and that the identity thief had successfully rented a number of apartments in her name, had been evicted from those apartments for non-payments resulting in Ms. Jarrett being contacted by debt collectors.

56.     In an attempt to remedy and prevent further instances of identity theft against her, Ms. Jarrett immediately contacted the West Melbourne Police Department to report the identity theft, completed the Federal Trade Commission ("FTC") Identity Theft Report and requested her credit reports from Trans Union, Equifax and Experian.

57.     Ms. Jarrett learned that Trans Union, Equifax and Experian included information in her credit files that resulted from identity theft, including collection accounts for apartment rentals, inaccurate and/or fraudulent personal identifying information and inquiry information listing each company that had obtained her consumer reports from Trans Union, Equifax and Experian without her authorization.

58.     Between July 2023 and the present, Ms. Jarrett has been disputing the fraudulent collection accounts, personal identifying information and unauthorized inquiries with Trans Union, Equifax and Experian.

59.     With one or more of her disputes, she provided Trans Union, Equifax and Experian with a Federal Trade Commission identify theft report and a West Melbourne Police Department case report and requested that Trans Union, Equifax and Experian place fraud alerts on her credit files.

60.     To date, Trans Union, Equifax and Experian have failed to block and/or delete some of the fraudulent information disputed by Ms. Jarrett.

61.     By way of example, Defendants Trans Union, Equifax, Experian and FCO has been and continue to report a collection account on Ms. Jarrett's credit reports attempting to collect a debt of $7,200 for unpaid rent at Indigo Champions Ridge that was rented by the identity thief.

62.     On or about March 14, 2024, Ms. Jarrett submitted written dispute letters to Trans Union, Equifax and Experian with a courtesy copy of each letter

also mailed to FCO ("March 2024 dispute") disputing the FCO collection account as identity theft.

63.    Upon information and belief, one or more of the credit reporting agencies also forwarded Ms. Jarrett's dispute letters to FCO.

64.    Defendants either failed to investigate Ms. Jarrett's March 2024 disputes, or if they did perform investigations, did not provide Ms. Jarrett with the results of their investigations and failed to delete the fraudulent FCO collection account.

65.    Notwithstanding the above, Ms. Jarrett has been disputing fraudulent inquiries with Trans Union, Equifax and Experian including those that were the result of the identity thief applying for apartment rentals using Ms. Jarrett's personal identifying information.

66.    Ms. Jarrett has been disputing the following fraudulent inquiries with Defendant Equifax: ComenityCapital/Carter (1/15/2023), Verizon Telecom (5/1/2023), LeasingDesk (11/9/2023, 9/19/2023, 1/9/2023. 12/2/2022 and 9/30/2022), On-Site Manager (12/15/2022 and 11/14/2022), SafeRent Solutions, Inc. (11/8/2022, 10/6/2022 and 9/30/2022) and Rhino New York, LLC (11/11/2023).

67.    Ms. Jarrett has been disputing the following fraudulent inquiries with Defendant Trans Union: Boulevard Home (2/27/2023), Path Light (2/3/2023), SmartMove (1/25/2023, 10/8/2022 and 10/7/2022), FL Tampa Invt. HM (1/20/2023) and Spartan Property Management (11/12/22).

68.    Ms. Jarrett has been disputing the following fraudulent inquiries with Defendant Experian: RentGrow (11/12/2023).

69.    Ms. Jarrett has also been disputing the following fraudulent address with Defendant Experian: 786 Olive Conch Street, Ruskin, FL 33570.

70.    Furthermore, Experian provided RentGrow with Ms. Jarrett's credit file on November 12, 2023 for a fraudulent rental application even after Ms. Jarrett placed a credit freeze and fraud alert on her credit file with Experian.

71.    Despite Ms. Jarrett's multiple requests to Equifax, Experian and Trans Union to remove the fraudulent FCO collection account, fraudulent personal identifying information and fraudulent inquiries identified above, these Defendants failed to delete this fraudulent information from her credit reports.

72.    Furthermore, Defendant FCO also failed to delete the fraudulent collection account from Ms. Jarrett's credit reports and cease collection activities against her.

73.    Defendants' derogatory and inaccurate reporting of the fraudulent information on Plaintiff's credit reports negatively reflects upon Ms. Jarrett's financial obligations, credit score and credit worthiness to existing and potential creditors.

74.    On or about April 24, 2024, Ms. Jarrett's rental application with Luminary at 95 was denied based on information in her Trans Union credit report which included the fraudulent information.

75.    Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *See Pedro v. Equifax, Inc.,* 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *See Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *See Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *See Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *See Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *See Coulbertson v. Experian Info. Sols., Inc.*,

No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

## COUNT I – VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST FCO

76.    Plaintiff incorporates by reference paragraphs 1, 3, 5 – 8, 10 – 12, 16, 29 – 30, 34 – 37, 52 – 59, 61 – 64 and 72 – 73 as if fully stated herein.

77.    FCO is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

78.    FCO violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's March 2024 Dispute when it failed to review all relevant information provided by the credit reporting agencies.

79.    As a result of FCO's violations of the FCRA, Plaintiff has been damaged.

80.    Plaintiff's damages include damages for mental and emotional distress associated with the FCO account remaining on her credit report(s) following her disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

81.    FCO negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

82.     Additionally, FCO committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

83.     Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against FCO in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT II - VIOLATIONS OF 15 U.S.C. §1692e(2)(a) AGAINST FCO

84.     Plaintiff incorporates by reference paragraphs 2 − 3, 5 − 12, 38 − 47, 52 − 59, 61 − 64 and 72 as if fully stated herein.

85.     A "debt collector" violates 15 U.S.C. §1692e(2)(a) by "[t]he false representation of the character, amount, or legal status of any debt."

86.     After Plaintiff placed FCO on notice that she was not responsible for the debt by communicating directly with FCO and through the credit reporting agencies in March 2024, FCO had no reasonable basis to continue to report the fraudulent FCO account to the credit reporting agencies.

87.     FCO violated §1692e(2)(a) when it communicated false credit information to the credit reporting agencies by stating that Plaintiff owes a debt in an attempt to coerce Plaintiff to pay the debt that she is not responsible to pay.

Each month that FCO communicated false credit information regarding Plaintiff constitutes a violation of §1692e(2)(a).

88.    FCO has violated §1692e(2)(a) each time the false credit information was viewed by a third party in connection with an account review, offer of credit, or application of credit. The FDCPA is a strict liability statute and accordingly FCO's conduct need not have been intentional, FCO's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

89.    FCO's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.* at 1194 (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

90.    FCO, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(2)(a).

91.    15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

92.    As a result of FCO's violations, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the FCO account remaining on her credit report(s) following her disputes, loss

of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against FCO in the form of actual damages, statutory damages and punitive damages pursuant to 15 U.S.C. § 1692k; attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III - VIOLATIONS OF 15 U.S.C. §1692e(8) AGAINST FCO

93.     Plaintiff incorporates by reference paragraphs 2 – 3, 5 – 12, 38 – 47, 52 – 59, 61 – 64 and 72 as if fully stated herein.

94.     A "debt collector" violates 15 U.S.C. §1692e(8) by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

95.     After Plaintiff placed FCO on notice that she was not responsible for the debt by communicating directly with FCO and through the credit reporting agencies in March 2024, FCO had no reasonable basis to continue to report the fraudulent FCO account to the credit reporting agencies.

96.     FCO violated §1692e(8) when it communicated false credit information to the credit reporting agencies by stating that Plaintiff owes a debt in an attempt to coerce Plaintiff to pay the debt that she is not responsible to pay.

Each month that FCO communicated false credit information regarding Plaintiff constitutes a violation of §1692e(8).

97.    Additionally, FCO has violated §1692e(8) each time the false credit information was viewed by a third party in connection with an account review, offer of credit, or application of credit.

98.    The FDCPA is a strict liability statute and accordingly FCO's conduct need not have been intentional, FCO's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

99.    FCO's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.* at 1194 (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

100.    FCO, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(8).

101.    15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

102.    As a result of FCO's violations, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the FCO account remaining on her credit report(s) following her disputes, loss

of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against FCO in the form of actual damages, statutory damages and punitive damages pursuant to 15 U.S.C. § 1692k; attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT IV - VIOLATIONS OF 15 U.S.C. §1692e(10) AGAINST FCO

103.    Plaintiff incorporates by reference paragraphs 2 – 3, 5 – 12, 38 – 47, 52 – 59, 61 – 64 and 72 as if fully stated herein.

104.    A "debt collector" violates 15 U.S.C. §1692e(10)  by "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

105.    After Plaintiff placed FCO on notice that she was not responsible for the debt by communicating directly with FCO and through the credit reporting agencies in March 2024, FCO had no reasonable basis to continue to report the fraudulent FCO account to the credit reporting agencies.

106.    FCO violated §1692e(10) when it communicated false credit information to the credit reporting agencies by stating  that Plaintiff owes a debt in an attempt to coerce Plaintiff to pay the debt that she is not responsible to pay.

Each month that FCO communicated false credit information regarding Plaintiff constitutes a violation of §1692e(10).

107.    Additionally, FCO has violated §1692e(10) each time the false credit information was viewed by a third party in connection with an account review, offer of credit, or application of credit.

108.    The FDCPA is a strict liability statute and accordingly FCO's conduct need not have been intentional, FCO's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

109.    FCO's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.* at 1194 (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

110.    FCO, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(8).

111.    15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

112.    As a result of FCO's violations, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the FCO account remaining on her credit report(s) following her disputes, loss

of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against FCO in the form of actual damages, statutory damages and punitive damages pursuant to 15 U.S.C. § 1692k; attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V – VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST FCO

113.    Plaintiff incorporates by reference paragraphs  2, 4, 5 – 12, 48 – 51, 52 – 59, 61 – 64 and 72 as if fully stated herein.

114.    At all relevant times to this action, FCO is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

115.    After Plaintiff placed FCO on notice that she was not responsible for the debt by communicating directly with FCO and through the credit reporting agencies in March 2024, FCO had no reasonable basis to continue to report the fraudulent FCO account to the credit reporting agencies.

116.    FCO violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when FCO knew that the debt was not legitimate or asserting the existence of some other legal right when Defendant knew that right did not exist.

117.    Specifically, FCO communicated false credit information about Plaintiff.

118.    "Any person who fails to comply with any provision of §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2).

119.    As a result of FCO's violations, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the FCO account remaining on her credit report(s) following her disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against FCO actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## <u>COUNT VI – VIOLATIONS OF 15 U.S.C. 1681c-2</u>
## <u>AGAINST TRANS UNION</u>

120.    Plaintiff incorporates by reference paragraph 1, 3, 5 – 7, 13, 16 – 28, 31 – 37, 52 – 65, 67, 71 and 73 - 75 as if fully stated herein.

121.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

122.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

123.    During the relevant timeframe, Trans Union received Plaintiff's March 2024 which requested a block of the fraudulent information.

124.    Plaintiff disputed the fraudulent information on her Trans Union credit report, identified herself and furnished Trans Union with a copy of the Federal Trade Commission identity theft report, and requested that Trans Union block the fraudulent information.

125.    In response to her dispute, Trans Union continued to report the tradelines and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

126.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

127.    Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

128.    As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in her credit file, damage to her reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VII - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST TRANS UNION

129.    Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 13, 16 – 28, 31 – 37, 52 – 65, 67, 71 and 73 - 75 as if fully stated herein.

130.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

131.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

132.    During the relevant time frame, Trans Union received Plaintiff's March 2024 Dispute which requested that the fraudulent information be removed from her credit file.

133.    Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

134.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

135.    Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

136.    As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in her credit file, damage to her reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VIII - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST TRANS UNION

137.    Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 13, 16 – 28, 31 – 37, 52 – 65, 67, 71 and 73 - 75 as if fully stated herein.

138.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

139.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

140.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

141.    After Plaintiff's March 2024 Dispute, Trans Union was placed on notice that it was reporting fraudulent information about Plaintiff, yet Trans Union continues to include the fraudulent information in Plaintiff's credit file.

142.    Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

143.    In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

144.    As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in her credit file, damage to her reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IX – VIOLATIONS OF 15 U.S.C. 1681c-2
## AGAINST EQUIFAX

145.    Plaintiff incorporates by reference paragraph 1, 3, 5 – 7, 15 – 28, 31 – 37, 52 – 66, 71, 73 and 75 as if fully stated herein.

146.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

147.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

148.    During the relevant timeframe, Equifax received Plaintiff's March 2024 Dispute which requested a block of the fraudulent information.

149.    Plaintiff disputed the fraudulent information on her Equifax credit report, identified herself and furnished Equifax with a copy of the Federal Trade Commission identity theft report, and requested that Equifax block the fraudulent information.

150.    In response to her dispute, Equifax continued to report the tradelines and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

151.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

152.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

153.    As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in her credit file, damage to her reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT X - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

154.    Plaintiff incorporates by reference paragraphs 1, 3, 5 − 7, 15 − 28, 31 − 37, 52 − 66, 71, 73 and 75 as if fully stated herein.

155.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

156.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

157.    During the relevant time frame, Equifax received Plaintiff's March 2024 Dispute which requested that the fraudulent information be removed from her credit file.

158.    Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

159.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

160.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

161.    As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in her credit file, damage to her reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by

law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XI - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EQUIFAX

162.    Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 15 – 28, 31 – 37, 52 – 66, 71, 73 and 75 as if fully stated herein.

163.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

164.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

165.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

166.    After Plaintiff's March 2024 Dispute, Equifax was placed on notice that it was reporting fraudulent information about Plaintiff, yet Equifax continues to include the fraudulent information in Plaintiff's credit file.

167.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

168.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

169.    As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in her credit file, damage to her reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XII – VIOLATIONS OF 15 U.S.C. 1681c-2
## AGAINST EXPERIAN

170.    Plaintiff incorporates by reference paragraph 1, 3, 5 – 7, 14, 16 – 28, 31 – 37, 52 – 65, 68 – 71, 73 and 75 as if fully stated herein.

171.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

172.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

173.    During the relevant timeframe, Experian received Plaintiff's March 2024 Dispute which requested a block of the fraudulent information.

174.    Plaintiff disputed the fraudulent information on her Experian credit report, identified herself and furnished Experian with a copy of the Federal Trade

Commission identity theft report, and requested that Experian block the fraudulent information.

175.    In response to her dispute, Experian continued to report the tradelines and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

176.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

177.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

178.    As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in her credit file, damage to her reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XIII - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EXPERIAN

179.    Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 14, 16 – 28, 31 – 37, 52 – 65, 68 – 71, 73 and 75 as if fully stated herein.

180.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

181.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

182.    During the relevant time frame, Experian received Plaintiff's March 2024 Dispute which requested that the fraudulent information be removed from her credit file.

183.    Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

184.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

185.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

186.    As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in her credit file, damage to her reputation for credit worthiness, credit denials, loss of the ability to

purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XIV - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EXPERIAN

187.    Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 14, 16 – 28, 31 – 37, 52 – 65, 68 – 71, 73 and 75 as if fully stated herein.

188.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

189.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

190.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

191.    After Plaintiff's March 2024 Dispute, Experian was placed on notice that it was reporting fraudulent information about Plaintiff, yet Experian continues to include the fraudulent accounts in Plaintiff's credit file.

192.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

193.    In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

194.    As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in her credit file, damage to her reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

195.     Plaintiff demands a trial by jury on all issues so triable.


Dated: January 14, 2025                *Respectfully submitted,*

**SHARMIN & SHARMIN, P.A.**

*/s/ Eiman Sharmin*
Eiman Sharmin, Esq.
eiman@sharminlaw.com
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022
*Attorneys for Plaintiff*